Redevelopment Authority of the City of Scranton et al. *v.* Pennsylvania Public Utility Commission. Redevelopment Authority of the City of Scranton, Petitioner.

Argued November 16, 1979, before Judges M<small>ENCER</small>, D<small>I</small>S<small>ALLE</small> and C<small>RAIG</small>, sitting as a panel of three.

*Leo A. Southard,* for petitioner.

*John J. Gallagher,* Assistant Counsel, with him *John B. Wilson,* Deputy Chief Counsel, *George M. Kashi,* Chief Counsel, for respondents.

*Thomas F. Aschinger,* with him *Jack F. Aschinger, Carroll F. Purdy, Thomas & Thomas,* for intervenors.

O<small>PINION</small> <small>BY</small> J<small>UDGE</small> D<small>I</small>S<small>ALLE</small>, January 2, 1980:

This is a petition for review of an order of the Pennsylvania Public Utility Commission (PUC) modifying an order of the Administrative Law Judge (ALJ) and assessing certain relocation costs on the Redevelopment Authority of the City of Scranton (Authority). We affirm.

On November 15, 1977, Authority applied for permission to improve the railroad crossing where North Seventh Avenue crossed below the grade of the tracks of Consolidated Rail Corporation (Conrail) in the City of Scranton, Pennsylvania. Authority sought to

increase the vertical clearance between the road surface and the Conrail bridge by lowering the roadway approximately two feet. Other contemplated alterations included the installation of storm drainage sewers and sanitary sewers and a widening of the highway.

The ALJ, in recommending that the project be approved, noted that several utility companies, including Pennsylvania Gas and Water (PG&W) and Pennsylvania Power and Light (PP&L), operated facilities that would have to be relocated, and noted further that it would be necessary to determine who should bear the costs of such relocation. He ordered that PG&W and PP&L pay for relocating their facilities, reasoning simply that since those facilities were located within the public right-of-way, it was perfectly proper to allocate their relocation costs to each utility company.

PG&W and PP&L filed exceptions to the ALJ's allocation of costs. The PUC granted their exceptions, on the grounds that it would be unreasonable and inequitable to make them pay to relocate the facilities. It is that action that Authority asks us to review.

Section 2704(a) of the Public Utility Code, 66 Pa. C.S. §2704(a) provides pertinently as follows:

The compensation for damages which the owners of adjacent property taken, injured, or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this part, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as provided in this section, by the public utilities or

municipal corporations concerned, or by the Commonwealth, *in such proper proportions as the commission may, after due notice and hearing, determine,* unless such proportions are mutually agreed upon and paid by the interested parties. (Emphasis added.)

Since the record indicates that the PUC, in allocating costs as it did, acted within the scope of its statutory authority, and did not abuse its discretion in any way, we affirm.

### ORDER

AND Now, this 2nd day of January, 1980, the order of the Public Utility Commission, dated October 3, 1978, granting the exceptions filed by Pennsylvania Gas and Water Company and Pennsylvania Power and Light Company is hereby affirmed.